UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-400-KSF

VINCENT LEE DURHAM                                                      PLAINTIFF

v.                          **OPINION & ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                            DEFENDANT

\* \* \* \* \* \* \* \* \* \*

The claimant, Vincent Lee Durham, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying him claim for Supplemental Security Income ("SSI") based on disability and disability insurance benefits ("DIB"). The Court, having reviewed the record, will affirm the Commissioner's decision because it was supported by substantial evidence.

**I.      OVERVIEW OF THE PROCESS**

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

     (1)      If the claimant is currently engaged in substantial gainful activity, he is not disabled.

     (2)      If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found disabled.

(3) If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4) If the claimant's impairment does not prevent him from doing past relevant work, he is not disabled.

(5) Even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc), he is not disabled.

*Id.* The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the administrative law judge reaches the fifth step without a finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider his residual functional capacity, age, education, and past work experience to determine if he could perform other work. If not, he would be deemed disabled. 20 C.F.R. 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F. 3d 388, 391 (6th Cir. 1999).

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance;

it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, the court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## II. THE ADMINISTRATIVE DECISION

In this case, the ALJ conducted a hearing on August 14, 2007, and issued his opinion denying Durham's application for SSI benefits on December 7, 2007. Durham claims disability due to lower back pain and neck problems. He was 45-years-old at the time of the ALJ's opinion.

Durham has a history of treatment for back and neck problems. Treatment notes from Dr. Jonathan Barry Dixon dated September 5, 2005, show Durham had left shoulder pain, difficulty with range of motion and probably tendinitis. Dr. Dixon treated Durham with medications but did not see him again.

Dr. David Reilly is Durham's treating physician and treated Durham in July of 2006 for back and neck pain. His treatment notes show that Durham complained of back pain with numbness and neck pain. Dr. Reilly ordered an MRI which showed evidence of multilevel disc protrusions with multilevel cervical cord deformity and multilevel discogenic and facet degenerative changes and multilevel spinal stenosis. Dr. Reilly saw Durham on June 14, 2007, for complaints of epigastric discomfort. On July 20, 2007, Dr. Reilly completed a Functional Capacities Form and stated that Durham can sit for 3 hours, stand for 1 hour and walk 2 hours in an 8-hour workday with rests. He

also stated that Durham can occasionally lift/carry 10 pounds, but never carry or lift more than 10 pounds. He should never bend, squat, crawl, climb or reach above shoulder level. He cannot use his hands for repetitive pushing and pulling and cannot use his feet for repetitive movements. Further, he is to avoid unprotected heights and driving automobile equipment. He has a moderate restriction from being around moving machinery, exposure of marked changes in temperature and humidity and exposure to dust, fumes and gases.

Dr. Guy M. Sava treated Durham August through September of 2006. His treatment records show that Durham suffered from neck, shoulder and back pain. Dr. Sava noted that Durham had a markedly decreased range of motion of the neck and his MRI showed congenital spinal stenosis in both the cervical and lumbar spine. Dr. Sava recommended L4-5 surgery but Durham stated that he was unable to afford the procedure at the time.

Dr. Sava referred Durham to physical therapy at Lake Cumberland Regional Hospital for his back and neck pain. Durham received 8 treatments but was not responding well so he was referred back to Dr. Sava.

At the request of the DDS, Durham was evaluated by Dr. Raymond Santucci on June 25, 2006. Dr. Santucci indicated that Durham had a normal examination and assessed him with chronic neck and back pain, headaches secondary to neck pain, exogenous obesity and tobacco abuse. He stated that Durham's neurological exam was normal. Dr. Santucci opined that Durham was capable of performing activities commensurate with his age, including a marked amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying.

Two state agency physicians reviewed the case. One opined that no physical impairment exists which significantly limits any basic work activity and a not severe determination was

warranted. The other physician opined that Durham could perform at least light work.

The ALJ began his analysis at step one by determining that Durham has not engaged in any substantial gainful activity since his alleged onset date of January 15, 2004. At step two, the ALJ found that Durham suffers from the following impairments determined to be severe as combined: low back and neck pain, vision problems and headaches; however, the ALJ determined that these impairments or combination of impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that although Durham's medically determinable impairments could reasonably be expected to produce the alleged symptoms, Durham's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible based on the objective medical evidence and other evidence.

The ALJ found that Durham maintained the residual functional capacity ("RFC") to perform a limited range of light work. The ALJ found that Durham can lift and carry 20 pounds occasionally and 10 pounds frequently. He is able to sit, stand and walk 6 hours in an 8-hour workday (with a sit/stand option every 30 minutes) but should avoid climbing ropes, ladders and scaffolds and can only occasionally bend and crouch. Further, Durham cannot be exposed to vibrating machines or a cold environment.

At step four, the ALJ determined that Durham is not capable of performing his past relevant work as a custodian, hand sander and a material handler. At the fifth and final step, taking into consideration Durham's age, education, work experience and RFC and relying on the testimony of the Vocational Expert ("VE"), the ALJ determined that there are jobs that exist in significant numbers in the national economy that the claimant could perform. Specifically, the ALJ found that Durham can perform the jobs of recreation aid, inspector tester and production worker. As a result,

the ALJ determined that Durham is not disabled.

The ALJ's decision that Durham is not disabled became the final decision of the Commissioner when the Appeals Council subsequently denied his request for review on November 5, 2009. This case is now ripe for review under 42 U.S.C. § 405(g), 1383(c)(3).

## III.  ANALYSIS

On appeal, Durham argues that the ALJ's decision was not based on substantial evidence and failed to apply the proper legal standards. Specifically, Durham argues the ALJ erred by disregarding his testimony and not finding him credible and by not giving controlling weight to Dr. Reilly's opinions. Durham also argues that the ALJ erred by relying on the VE's answers to an inaccurate hypothetical relating to Durham's RFC.

### A.  Credibility

The ALJ properly weighed Durham's allegations of pain and gave sufficient reasons for finding that he was not entirely credible. An ALJ's credibility determinations related to a claimant's subjective complaints are entitled to great deference. *Blacha v. Secr'y of Health & Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990). In this case, the ALJ concluded that Durham's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible. It is clear from the language of the ALJ's opinion that he considered the combination of impairments when evaluating Durham's subjective complaints of pain. The ALJ reasoned that the medical evidence did not support a finding that Durham was significantly limited in his ability to perform activities of daily living or work activity and that his complaints of pain had been inconsistent. The ALJ reasoned that Dr. Santucci's physical exam was within normal limits

6

and cited Durham's ability to care for his personal needs and to drive. Further, Durham's testimony about his activities of daily living supports the ALJ's credibility determination. Durham testified that he was able to use the riding lawn mower and take care of all his personal needs, except he needed help getting dressed. He also testified that he was able to drive, although Dr. Reilly opined that he could not operate an automobile.

**B.     Medical Opinions**

The ALJ gave proper weight to the medical opinions in the record and provided sufficient reasoning for the weight given to each opinion. It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 530-31 (6th Cir. 1997). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris*, 756 F.2d at 435. The Social Security regulations recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. . . ." 20 C.F.R. § 404.1527(d)(2). Thus, when weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors, such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir.

7

2004).

The ALJ found that Dr. Reilly's opinions relating to Durham's RFC were not supported by the evidence and gave greater weight to the state agency consultants' opinions. Substantial evidence supports the ALJ's decision to do so and the ALJ sufficiently explained his reasoning for not giving Dr. Reilly's opinions controlling weight. Dr. Reilly is not a treating physician; rather, he is an examining physician and only saw Durham on two or three occasions. Dr. Reilly's treatment notes do not provide support for his opinion regarding Durham's limitations. Dr. Reilly completed the functional capacity form in July 2007, after not treating him for back and neck pain for approximately a year as Durham's most recent visit to Dr. Reilly was for epigastric pain and did not mention back or neck pain at all. It was permissible for the ALJ to rely on the opinions of the state agency examining physician and consultants. Dr. Santucci's opinions are supported by the medical evidence in the record and the state agency consultants agreed with his assessment.

**C.    Vocational Expert Testimony**

The ALJ properly relied on the VE's testimony in response to a hypothetical question that fairly reflected Durham's limitations as described in the RFC finding. Since the RFC finding was supported by substantial evidence and the hypothetical was based on that RFC finding, the ALJ's reliance on the VE's testimony was proper. It was permissible for the ALJ to disregard the VE's testimony in response to the hypothetical that reflected the limitations that Dr. Reilly placed on Durham because, as discussed herein, Dr. Reilly's opinions were properly given little weight.

Accordingly, the Court finds that substantial evidence supports the Commissioner's decision and will affirm it.

## IV. CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby

**ORDERS:**

(1)  the Plaintiff's motion for summary judgment [DE #11] is **DENIED**;

(2)  the Commissioner's motion for summary judgment [DE #12] is **GRANTED**;

(3)  the decision of the Commissioner is **AFFIRMED** pursuant to sentence four [4] of 42 U.S.C. § 405(g) as it was supported by substantial evidence and decided by the proper legal standards; and

(4)  A judgment will be entered contemporaneously with this Opinion and Order.

This August 2, 2010.

Signed By:

*Karl S. Forester* KSF

United States Senior Judge